This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Beth Bowles ("Bowles"), appeals her conviction from the Wayne County Court of Common Pleas. We affirm.
 I.
On June 19, 2000, Amber Gordon was pronounced dead at the Wooster Community Hospital. The Wayne County Grand Jury indicted Bowles on involuntary manslaughter, in violation of R.C. 2903.04(A), and permitting child abuse, in violation of R.C. 2903.15. The indictment did not identify a specific predicate offense for the charge of involuntary manslaughter. Bowles waived her right to a jury trial, and the case proceeded to a bench trial. At the close of the state's evidence, the trial court granted Bowles' motion for a directed verdict of acquittal on the charge of permitting child abuse.
On March 8, 2001, the trial court convicted Bowles of involuntary manslaughter. On April 9, 2001, trial court sentenced Bowles to three years in prison. This appeal followed. The assignments of error will be considered out of order for ease of discussion[1].
 II.
Assignment of Error No. 1:
 DEFENDANT/APPELLANT BETH BOWLES WAS DEPRIVED OF HER RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION WHEN THE STATE OF OHIO AFFIRMATIVELY STATED THAT THE PREDICATE FELONY OFFENSE IN A PROSECUTION FOR INVOLUNTARY MANSLAUGHTER WAS PERMITTING CHILD ABUSE BUT THE TRIAL COURT CONSIDERED OTHER FELONIES NOT ENUMERATED UNTIL THE CLOSE OF THE STATE OF OHIO'S CASE IN FINDING THE DEFENDANT GUILTY OF THE OFFENSE.
In her first assignment of error, Bowles argues that she was denied her right to a fair trial. Bowles asserts that she did not have adequate notice of the predicate offense and therefore was unable to prepare a defense. On appeal, Bowles states that it is "[f]undamentally unfair to allow the prosecution to mislead the defense and then change the predicate felony it asserts after the close of its case in chief." We disagree.
Bowles argues that the indictment failed to identify the predicate offense. A criminal indictment serves two purposes. First, an indictment compels the government to aver all material facts constituting the essential elements of an offense, providing the accused adequate notice and the opportunity to defend the charges. State v. Childs (2000),88 Ohio St.3d 194, 198. Second, the indictment, by identifying and defining the offenses, serves to protect the accused from future prosecutions for the same offenses. Childs, 88 Ohio St.3d at 198.
An indictment for involuntary manslaughter does not need to set forth the predicate offense or specify either the manner in which or means by which the death was caused. R.C. 2941.14(A); State v. Schaeffer (1917),96 Ohio St. 215, paragraph two of the syllabus; State v. Haffey (Sept. 2, 1993), Cuyahoga App. No. 63576, unreported. An indictment for involuntary manslaughter is sufficient if it uses the language of R.C.2903.04 and charges the defendant with causing the death of a victim as "a proximate result of the [defendant's] committing or attempting to commit a felony." See R.C. 2903.04(A); see also State v. Hython (Oct. 19, 1994), Medina App. No. 2302-M. unreported, at 4-5.
In the present case, the indictment for the charge of involuntary manslaughter states "BOWLES caused the death of Amber Gordon as the proximate result of [Bowles] committing or attempting to commit a felony[.]" There was no need for the state to set forth the predicate offense or to specify the manner in which or means by which Bowles caused the victim's death. R.C. 2941.14(A). As the state is not required to specify the predicate felony, we find that the indictment sufficiently apprised Bowles that she had been charged with the crime of involuntary manslaughter with a predicate felony offense.
Second, Bowles argues the state's opening statement provided inadequate notice of the charged offense. Bowles supports this argument with the following excerpt from the state's opening statement:
 I believe at the end of the state's case, your Honor, that there will be sufficient evidence from which this Court can determine that [Bowles] did in fact cause the death of Amber Gordon while committing a felony act, and that felony act was permitting child abuse.
We note that the state also made the following comments in its opening statement:
 on June 16th of 2000, Amber Gordon suffered one final act of abuse at the hands of [Bowles]. It was that abuse, one blow to the stomach, to the abdomen area, that severed the intestine of the three-year-old girl who weighed approximately twenty pounds. It is that injury which resulted in Amber Gordon's death after three days of suffering with peritonitis.
Viewing the state's opening statement in its entirety, we find that Bowles had sufficient notice that the state intended to prove that it was Bowles who injured Amber on June 16, 2000, this injury proximately caused Amber's death and Bowles' actions of June 16, 2000, constituted a felony.
Lastly, Bowles agues that her trial counsel was unable to prepare a defense because her counsel was unaware of who was going to be listed as the perpetrator. At trial, Bowles' counsel stated "[i]t only became clear [on the first day of trial] as the evidence unfolded as to who was the person that was being identified as the person who committed the abuse." We find this argument to be without merit.
On October 23, 2000, the state responded to a defense motion for discovery with Bowles' statements, written summaries of Bowles' oral statements and a witness list. During the Wooster Police Department's investigation of Amber's death, Bowles admitted that she injured Amber on June 16, 2000. Her July 3, 2000 statement to the police provides:
 [m]y nerves were on edge as I walked into the living room from the kitchen with my hands full of clothes and [the] baby. I fell over some toys the kids had been playing with and hit my knees. I was so mad because I had been telling them all that morning to behave and to stop tearing things out. I had dropped the clothes and I laid the baby down on the floor. I went to get up. I was so upset [and] mad my knees stung and the baby almost hit the floor. I got so angry that when I went to get up I swung my elbow back and said ["]why don't you stay out of the way.["] My elbow hit Amber and she fell on her bottom. She started to cry[.]
Bowles immediately apologized to Amber and inspected her body for injuries. Bowles noticed that Amber's "belly was a little red[.]" For the next couple of days, Amber was unable to have a bowel movement and several times complained to her father of a stomachache. On June 19, 2000, Amber was unable to keep food down and vomited continuously throughout the day. Later that evening, Amber stopped breathing and was taken to the hospital where she was pronounced dead.
Bowles' statements to the police and her knowledge of the sequence of events provided her and her trial counsel with adequate notice of the prosecution's contention that the events of June 16, 2000 proximately caused Amber's death on June 19, 2000.
Based on the foregoing, Bowles had adequate notice of the charge of involuntary manslaughter and the existence of a predicate felony offense. She was fully aware of when and where the conduct at issue took place.
The indictment apprised Bowles that she was charged with first degree, involuntary manslaughter. The state's opening statements apprised Bowles that the June 16, 2000 injury proximately caused Amber's death. Bowles' statement to the police, provided in discovery, contained Bowles admission that she injured Amber on June 16, 2000. Therefore, we find that Bowles had adequate notice that the predicate felony offense was the June 16, 2000 incident where Bowles injured Amber. The record in this case does not support the conclusion that Bowles was denied a fair trial as a result of inadequate notice of the charged offense.
Bowles' first assignment of error is overruled.
 III.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO GRANT THE DEFENDANT/APPELLANT'S MOTION FOR ACQUITTAL ON THE CHARGE OF INVOLUNTARY MANSLAUGHTER MADE AT THE CLOSE OF THE STATE OF OHIO'S CASE AND AT THE CLOSE OF THE EVIDENCE.
In her third assignment of error, Bowles argues that her conviction is against the sufficiency of the evidence. We disagree.
In reviewing a conviction for the sufficiency of the evidence, an appellate court's function is:
 to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
R.C. 2903.04(A) states "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." Involuntary manslaughter is a felony of the first degree if the predicate offense is the commission or an attempt to commit a felony. R.C. 2903.04(C). This court has defined proximate cause as:
 acting individually or in concert with another, [who] sets in motion a sequence of events, the foreseeable consequences of which were known or should have been known to him at the time, he is criminally liable for the direct, proximate and reasonably inevitable consequences of death resulting from his original criminal act.
State v. Chambers (1977), 53 Ohio App.2d 266, 272-273. R.C. 2919.22(B) provides that no person shall abuse, torture, cruelly abuse, and administer corporal punishment or other physical disciplinary measures to a child under eighteen years old.
In the present case, the state presented evidence from Dr. Murthy, the deputy coroner of Stark County. Dr. Murthy stated the cause of Amber's death as a "transection of the duodenum resulting in peritonitis." Dr. Murthy testified that a blunt force trauma to Amber's abdomen caused the transection of her duodenum. He described a blunt force as any blunt object applied to the body by force that results in an injury. On cross-examination, Dr. Murthy revealed that an elbow could cause a blunt force trauma.
Dr. Murthy visited Bowles' apartment to examine a flight of stairs that Amber allegedly fell down on June 19, 2000. He determined that some of Amber's surface bruises could have occurred during a fall. He testified that a person who is falling, protects their face and abdomen by assuming a fetal position. Thereby, ruling out Amber's fall down the steps as the cause of her abdomen injury.
Dr. Murthy testified that the force of the injury and the length of time between the injury and death determines the type of symptoms that a person would exhibit. The collection of fluid in Amber's abdomen and the damage to her internal tissues revealed that a significant length of time passed between her injury and death. After performing a microscopic examination of her duodenum, Dr. Murthy opined that Amber's injury occurred two or three days before she died.
Based on his opinion that two or three days lapsed between Amber's injury and death, Dr. Murthy was able to describe Amber's possible symptoms. Dr. Murthy testified that Amber would have appeared listless, looked and felt bad, been sick to her stomach, and been unable to retain food. After her injury, Amber's general well being would have gone down, her vomiting would have increased until she went into some type of shock and eventually died.
The state presented evidence from three detectives of the Wooster Police Department. Detective Jones testified that the Wayne County Children Services contacted him on June 20, 2000, regarding the death of a small child the night before at Wooster Community Hospital. Throughout the course of the police investigation of Amber's death, Bowles was interviewed several times by various officers. At the first interview, Bowles told the detective that on June 19, 2000, Amber woke up late in the morning, complained of a tummy ache and fell down a flight of stairs in the house. Bowles stated that Amber hit her head two times against the metal railing during her fall.
Later that week, Detective Jones returned to Bowles' apartment accompanied by the coroner to inspect the stairs. As this time, Bowles stated that Amber hit her head on the railing opposite the ninth and eleventh steps. Detective Jones testified that he met with Bowles again after the coroner had established the cause of Amber's death. He asked Bowles to recall the events of the two or three days before Amber's death. She stated that Amber seemed fine during the weekend and did not complain of a tummy ache until Monday, June 19, 2000.
Detective Jones asked her what could have caused Amber's injury. Bowles stated that Amber could have been injured while wrestling with the other children in the house. She described Amber as a clumsy child who was always falling down and tumbling over her toys. Bowles became defensive when questioned about the possibility that she snapped under stress and injured Amber stating "[n]o, I catch myself before that because I've been accused of that before, and I've never touched my kids * * * I am always very cautious about catching myself on something like that."
The defense presented evidence of a videotaped interview with Bowles at the police station and Bowles' final written statement to the police on July 3, 2000. As previously mentioned, the written statement contains Bowles' admission of striking Amber's abdomen with her elbow while she was angry with the child.
After viewing all the evidence in a light most favorable to the prosecution, as we are required to do when considering a question of sufficiency, we conclude that a rational trier of fact could have found the essential elements of involuntary manslaughter. The proximate cause of Amber's death was a blunt force trauma to her abdomen two or three days before her death. Bowles admitted to striking the child in her abdomen three days before Amber died. The state presented sufficient evidence that on June 16, 2000, Bowles committed a felony that proximately caused Amber's death on June 19, 2000. Accordingly, Bowles' third assignment of error is overruled.
 IV.
Assignment of Error No. 2:
 THE DEFENDANT/APPELLANT WAS DEPRIVED OF HER RIGHT TO EFFECTIVE REPRESENTATION OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION WHEN THE DEFENDANT/APPELLANT'S TRIAL COUNSEL FAILED TO MOVE FOR A BILL OF PARTICULARS AND FAILED TO MOVE FOR DISMISSAL OF THE CHARGES CONTAINED IN THE INDICTMENT AT THE CONCLUSION OF THE STATE OF OHIO'S OPENING STATEMENT.
In her second assignment of error, Bowles argues that she received ineffective assistance of counsel. Bowles asserts that her trial counsel was ineffective for: 1) failing to request a bill of particulars and 2) failing to move for a directed verdict after the state's opening statement. We disagree.
A two-step process is employed in determining whether the right to effective counsel has been violated.
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693.
In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 80 L.Ed.2d at 695. The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate. State v. Smith (1985),17 Ohio St.3d 98, 100.
An appellate court may engage in the prejudice prong of the analysis alone if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. State v. Loza (1994),71 Ohio St.3d 61, 83. Accordingly, we will begin our analysis with a discussion of the prejudice prong.
Bowles argues that the deficiency of her trial counsel is based in part on her trial counsel's failure to move for a bill of particulars. A bill of particulars states "specifically the nature of the offense charge and of the conduct of the defendant alleged to constitute the offense." Crim.R. 7(E). A criminal defendant is generally not prejudiced by the absence of a bill of particulars where the underlying indictment clearly identifies: 1) the criminal statute that a defendant is being charged with violating, 2) the exact time frame during which the crimes occurred and 3) the county or location where the alleged crimes took place. Statev. Brown (1993), 90 Ohio App.3d 674, 682.
Having already found that Bowles' indictment clearly identified the criminal charge of involuntary manslaughter, the record reflects that the indictment also identified the time period and county where the alleged crime occurred. Therefore, we find that Bowles is unable to demonstrate prejudice from her trial counsel's failure to request a bill of particulars.
Bowles also argues that her trial counsel performed deficiently in failing to move for a directed verdict after the state's opening statements. A defendant is not deprived of effective assistance of counsel merely because her trial counsel chooses not to pursue every possible trial tactic. See, e.g., State v. Brown (1988), 38 Ohio St.3d 305,319. After the close of the state's evidence, the trial court granted Bowles' motion for directed verdict of acquittal on the charge of permitting child abuse. Having already found that the state presented sufficient evidence of the involuntary manslaughter charge, we find that Bowles has failed to demonstrate prejudice from her trial counsel's choice to raise a motion for a directed verdict after the close of the state's evidence rather than after the state's opening statement.
Bowles' second assignment of error is overruled.
 V.
Having overruled Bowles' three assignments of error, we affirm the judgment of the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BATCHELDER, P.J., WHITMORE, J. CONCUR.
[1] The appellee did not file a brief in this case.